UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHELLE CLARK,

　　　Plaintiff,

　　　　　v.

THOMAS J. VILSACK, *et al.*,

　　　Defendants.

Civil Action No. 19-394 (JEB)

## MEMORANDUM OPINION

Section 508 of the Rehabilitation Act requires federal agencies to ensure that their electronic information and technology (EIT) is accessible to their employees with disabilities. Since January 2015, Plaintiff Michelle Clark, who is blind and works at the United States Department of Agriculture, has been trying to get her employer to comply. Over the past six years, her administrative complaints have pinballed around numerous offices, and her lawsuit has bounced between this Court and the agency. While USDA has acknowledged that it violated section 508, it has yet to complete its self-identified corrective actions. Tired of waiting, Clark now moves for summary judgment on all counts — one under the Rehabilitation Act and two via the Administrative Procedure Act. Defendants oppose and cross-move for summary judgment on the three claims.

Because the current extent of USDA's remediation is not entirely clear (but is central to the APA claims), the Court will consider only the Rehabilitation Act count in this Opinion. It concludes that the Act does not provide Plaintiff with a cause of action and thus grants Defendants judgment on that count alone. It will set a hearing to discuss the two APA claims

1

that remain.

## I.    Background

The Court has previously set forth the facts and assumes the reader's familiarity with that Opinion.  See Clark v. Perdue, 2019 WL 2476614, at *1 (D.D.C. June 13, 2019).  In brief, Clark is employed at the Natural Resources Conservation Service, a division of USDA, in the District of Columbia.  Id.; see also ECF No. 36-2 (Def. Resp. to Pl. Statement of Facts), ¶ 2.  She is an individual with a disability, as defined by the Rehabilitation Act.  See DRPSF, ¶ 2.  Under section 508 of that Act, federal agencies must ensure that the EIT that they develop, procure, maintain, or use "allows . . . individuals with disabilities who are Federal employees to have access to and use of information and data that is comparable to [that of] . . . Federal employees who are not individuals with disabilities."  29 U.S.C. § 794d(a)(1)(A).

In January 2015, Plaintiff filed an administrative complaint alleging that USDA used several inaccessible software programs, in violation of section 508.  See DRPSF, ¶¶ 3–4.  When that complaint went unresolved, she brought suit in this Court in February 2019.  See ECF No. 1 (Compl.).  She asserted two counts via the APA — one for unlawful agency action and the other for agency action unlawfully withheld or unreasonably delayed.  Id., ¶¶ 35–51.  In response, Defendants asked for a stay and moved for voluntary remand to the agency to allow it to complete the investigation.  See ECF No. 8.  The Court found that the remand would not unduly prejudice Clark and thus granted Defendants' Motion in June 2019, staying the case.  See ECF No. 13; see also Clark v. Perdue, 2019 WL 2476614, at *1, 4.

USDA then investigated Plaintiff's administrative complaint and issued a Final Agency Decision in December 2019.  See DRPSF, ¶ 13; ECF No. 45-5, Exh. III (FAD) at 1–14.  It

concluded that Clark had proven a section 508 violation and required the agency to "address civil rights deficiencies within the office."  FAD at 9, 12; see also DRPSF, ¶¶ 14–15.  The FAD also instructed Clark to submit a request for equitable relief and attorney fees, which she did in February 2020.  See DRPSF, ¶¶ 18–19.  In response, USDA issued a second FAD, granting Plaintiff a portion of her requested fees.  Id., ¶¶ 23–29.

After hearing from the parties, this Court then lifted the stay.  See 10/8/2020 Min. Order. Plaintiff filed an Amended Compliant in November 2020, adding a count under section 508 and modifying her two APA counts to focus on USDA's delayed implementation of the relief ordered in the FAD.  See ECF No. 26 (Am. Compl.).  She has now moved for summary judgment on all claims.  See ECF No. 32-1 (Pl. MSJ).  She seeks declaratory relief as well as "an injunction requiring Defendants to implement the overdue relief promised by the USDA's own decisions."  Id. at 2.  In response, USDA — which still has yet to fully comply with the FAD's ordered remediation, see ECF No. 47 (May 2021 Compliance Report) at ECF p.2 — has cross-moved for summary judgment.  See ECF No. 36 (Def. MSJ).

## II.   Legal Standard

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'"  Family Trust of Mass., Inc. v. United States, 892 F. Supp. 2d 149, 154 (D.D.C. 2012) (quoting Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003)).  If it determines that one party is not entitled to summary judgment, it "changes tack on the cross motion and gives the unsuccessful movant 'all of the favorable factual inferences that it has just given to the movant's opponent.'"  Nucap Indus., Inc. v. Robert Bosch LLC, 273 F. Supp. 3d

986, 997–98 (N.D. Ill. Mar. 31, 2017) (quoting Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund, 778 F.3d 593, 603 (7th Cir. 2015)).  It is nonetheless still possible for a court to deny summary judgment to both sides.

Summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it is capable of affecting the substantive outcome of the litigation.  See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Liberty Lobby, 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998).  The court must "eschew making credibility determinations or weighing the evidence."  Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).  The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial.

4

See Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The non-movant, in other words, is required to provide evidence that would permit a reasonable jury to find in his favor.  See Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

## III.   Analysis

Defendants concede that they violated the Rehabilitation Act and are in the process of implementing EIT changes for Plaintiff's benefit.  See FAD at 10, 12; see also DRPSF, ¶¶ 14–15; see Def. MSJ at 1–2 (discussing findings in FAD).  They nonetheless contend that her claim under section 508 cannot cross the starting line because that section does not provide her with a cause of action.  Disputing this conclusion, Clark argues that section 508 expressly permits her to sue, and she alternatively falls back on an implied right to do so.  As the parties' dispute centers on the interaction of some of the Rehabilitation Act's sections, the Court will kick off with a quick tour of the statute before addressing Plaintiff's theories.

### A.   Statutory Framework

Congress enacted the Rehabilitation Act in 1973 "to ensure that members of the disabled community could live independently and fully participate in society."  American Council of the Blind v. Paulson, 525 F.3d 1256, 1259 (D.C. Cir. 2008).  It was the "first major federal statute designed to protect the rights of and provide assistance to" individuals with disabilities.  Smith v. Barton, 914 F.2d 1330, 1338 (9th Cir. 1990).  Congress amended the Act in 1986 by adding section 508, which then required the Executive Branch to develop guidelines to ensure that EIT would be accessible to people with disabilities.  See Rehabilitation Act Amendments of 1986, Pub. L. No. 99-506, § 603, 100 Stat. 1807, 1830–31; Werwie v. Vought, 19-713, 2020 WL 6781220, at *3 (D.D.C. Nov. 18, 2020).  While that version of section 508 required each federal

agency to comply with the developed guidelines, it lacked an independent enforcement

mechanism.  See Pub. L. No. 99-506, § 603; see also Werwie, 19-713, 2020 WL 6781220, at *3.

Congress gave section 508 a full makeover in 1998.  As part of the Act's glow-up, the

legislature rewrote the accessibility mandate and added a subsection entitled "Enforcement."

See Workforce Investment Act of 1998, Pub. L. No. 105-220, § 408(b), 112 Stat. 936, 1203–06;

see also Werwie, 19-713, 2020 WL 6781220, at *3.

The mandate in section 508(a) now requires:

> When developing, procuring, maintaining, or using electronic and
> information technology, each Federal department or agency . . .
> shall ensure, unless an undue burden would be imposed on the
> department or agency, that the electronic and information
> technology allows, regardless of the type of medium of the
> technology—
>
> (i) individuals with disabilities who are Federal employees to have
> access to and use of information and data that is comparable to the
> access to and use of the information and data by Federal employees
> who are not individuals with disabilities . . . .

29 U.S.C. § 794d(a)(1)(A).  A separate subsection provides the same for "members of the public

seeking information or services from" federal agencies.  Id. § 794d(a)(1)(A)(ii).

Section 508's enforcement mechanism — central to the parties' dispute — provides

aggrieved individuals with two remedies.  First, "any individual with a disability may file a

complaint alleging that a Federal department or agency fails to comply with [section 508(a)]" —

the block quote above — "in providing electronic information and technology."  Id.

§ 794d(f)(1)(A).  Such a complaint is an administrative one, as it "shall be filed with the Federal

department or agency alleged to be in noncompliance" and processed pursuant to "the complaint

procedures established to implement" another section of the Act.  Id. § 794d(f)(2).  Second,

under the header "Civil Action," section 508 guarantees that "[t]he remedies, procedures, and rights set forth in [section 505(a)(2)] . . . shall be the remedies, procedures, and rights available to any individual with a disability filing a complaint" via the administrative-complaint process. Id. § 794d(f)(3).  In turn, section 505(a)(2) — the last stop on this tour (for now) — provides that Title VI's comprehensive remedial scheme "shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance." Id. § 794a(2).

      B.  Cause of Action

Plaintiff first argues that the "Civil Action" provision of section 508 expressly furnishes a private right of action that authorizes her suit.  See ECF No. 39 (Pl. Reply) at 1, 3, 5–7.  Although the government agrees that section 508 authorizes lawsuits in some circumstances, it rejoins that the section does not allow federal employees to sue the federal government as an employer.  See Def. MSJ at 9–10.  To sue, then, USDA contends that Clark must seek relief either via section 501 — which prohibits employment discrimination by federal agencies against individuals with disabilities — or the APA.  Compare Def. MSJ at 9 (positing that "Clark, as a federal employee, is required to file any Rehabilitation Act claim under Section 501 of the [Act]"), with Def. Reply at 6 ("After filing a Section 508 administrative complaint, the vehicle for a federal employee to file suit in federal court is to seek review under [the APA]."); see also 29 U.S.C. § 791.  While the Court need not decide the proper mechanism for this suit, it agrees with Defendants that section 508 is not one.

As mentioned above, that section provides for a "Civil Action," but limits the available "remedies, procedures, and rights" to those listed in section 505(a)(2).  See 29 U.S.C.

§ 794d(f)(3).  The remedies in that latter subsection are available only to a "person aggrieved by any act or failure to act by any <u>recipient of Federal assistance or Federal provider</u> of such assistance."  <u>Id.</u> § 794a(a)(2) (emphasis added).  In <u>Lane v. Pena</u>, 518 U.S. 187 (1996), the Supreme Court considered section 505's use of the term "Federal provider" and read it to mean "federal funding agencies acting as such."  <u>Id.</u> at 193 (determining whether Congress waived sovereign immunity); <u>see also</u> <u>Berke v. Fed. Bureau of Prisons</u>, 942 F. Supp. 2d 71, 82 (D.D.C. 2013) (finding that section 505's remedies are limited to claims against recipients and providers of federal assistance).  Plaintiff offers this Court no basis to deviate from that determination.  It thus concludes, in harmony with courts that have considered the issue, that section 505's remedies are not available to persons aggrieved by the Government acting in its capacity as an employer.  <u>Gonzalez v. Perdue</u>, No. 18-459, 2020 WL 1281237, at *9 (E.D. Va. Mar. 17, 2020) (considering section 508 claim and concluding same); <u>Latham v. Brownlee</u>, No. 03-933, 2005 WL 578149, at *9 (W.D. Tex. Mar. 3, 2005) (finding section 508 "does not authorize a private, non-administrative right [of] action"); <u>cf.</u> <u>Leiterman v. Johnson</u>, 60 F. Supp. 3d 166, 177 (D.D.C. 2014) (finding no section 508 cause of action for federal employee to sue federal employer and noting plaintiff conceded that section 505 did not provide cause of action).  While the Government must, of course, comply with the Rehabilitation Act, section 508 thus does not expressly provide Clark with the right to sue.

Beyond disagreeing with this understanding of "Federal provider," Plaintiff contends that because USDA must comply with the Act and because section 508 provides for both administrative complaints and civil actions to remedy violations, the Court must permit her to maintain this count.  <u>See</u> Pl. Reply at 5–6.  Failing to do so, her argument runs, would render the

"Civil Actions" portion of section 508 surplusage.  Id. at 6.  Not at all.  Congress can provide

different enforcement mechanisms for different aggrieved individuals.  Whereas section

508(f)(1) enables federal employees and private parties to file administrative complaints against

federal agencies, section 508(f)(3) — via its reliance on the remedies available in section 505 —

provides for civil actions only against recipients and providers of federal assistance.  This

understanding of the "Enforcement" provision does limit the availability of private suits, but it

does not render section 508's "Civil Actions" subsection superfluous; instead, that provision

directly applies to providers of federal funding, who can be sued.  See 29 U.S.C. § 794d.  It is

manifest, therefore, that section 508 provides no express cause of action.

In the alternative, Clark contends that it affords her an implied right of action.  See Pl.

Reply at 7–9.  This long putt comes up short.  As just explained, it is clear that Congress created

a thorough enforcement scheme for section 508.  See 29 U.S.C. § 794d(f) (entitled

"Enforcement").  "The comprehensive character of the remedial scheme expressly fashioned by

Congress strongly evidences an intent not to authorize additional remedies."  Nw. Airlines, Inc.

v. Transp. Workers Union of Am., AFL-CIO, 451 U.S. 77, 93–94 (1981); e.g., Karahalios v.

Nat'l Fed'n of Fed. Emps., Loc. 1263, 489 U.S. 527, 533 (1989) ("It is also an 'elemental canon'

of statutory construction that where a statute expressly provides a remedy, courts must be

especially reluctant to provide additional remedies."); Johnson v. Interstate Mgmt. Co., LLC, 849

F.3d 1093, 1098 (D.C. Cir. 2017) (declining "to recognize a new implied cause of action" when

"text of [statute] specifically addresses who may sue").  Plaintiff does not point to "strong indicia

of a contrary congressional intent" that would enable the Court to escape the "conclu[sion]" that

caselaw "compel[s]": "Congress provided precisely the remedies it considered appropriate" for this statute.  Middlesex County Sewerage Authority v. Sea Clammers, 453 U.S. 1, 15 (1981).

       She instead contends that section 508 "incorporates Section 504's comprehensive disability rights enforcement scheme in actions by federal employees" against federal agencies and thus provides her with a cause of action.  See Pl. Reply at 2; see also id. at 6–7.  Section 504 prohibits recipients of federal financial assistance as well as executive agencies from conducting programs or activities that discriminate on the basis of a disability.  See 29 U.S.C. § 794(a).  To the extent that she is right about such incorporation of remedies, her argument runs headlong into Circuit precedent holding that, like section 508, section "504 does not provide federal employees" with a "'route for relief under the Rehabilitation Act,'" even as it does offer other people the right to sue.  Taylor v. Small, 350 F.3d 1286, 1291 (D.C. Cir. 2003) (quoting Rivera v. Heyman, 157 F.3d 101, 104 (2d Cir. 1998)) (collecting cases); see also Anderson v. Duncan, 20 F. Supp. 3d 42, 53 (D.D.C. 2013), amended, No. 06-1565, 2013 WL 12328768 (D.D.C. Nov. 15, 2013) ("Section 501 of the Rehab Act provides the exclusive cause of action for a federal employee alleging disability discrimination by a federal agency.").

       Similarly, her appeal to the legislative record from the passage of section 504, see Pl. Reply at 8–9 — enacted 20 years prior to the 1998 amendments that include section 508's "Enforcement" provisions, see Rehabilitation, Comprehensive Services, and Developmental Disabilities Amendments of 1978, Pub. L. No. 95–602, § 504, 92 Stat. 2955 (Nov. 6, 1978) — provides limited, if any, indicia of congressional intent related to section 508.  Here, "neither the language nor the structure of the Act shows any congressional intent to provide a private cause of action" for federal employees to enforce federal agencies' violations of section 508.  See

10

<u>Karahalios</u>, 489 U.S. at 533.  The Court, accordingly, finds that Plaintiff may not bring suit under that section.

**IV.     Conclusion**

For the aforementioned reasons, the Court will deny Plaintiff's Motion for Summary Judgment on the Rehabilitation Act count and grant Defendants' on that count only.  It will set a hearing to discuss the two Administrative Procedure Act claims.  A separate Order so stating will issue this day.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  <u>May 27, 2021</u>

11